IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ALEX DOUGLAS,

       Petitioner,

v.                                 CASE NO. 5:15-cv-124-LC-GRJ

N.C. ENGLISH, WARDEN,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on ECF No. 1, Petitioner's *pro se*

Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.

When Petitioner filed the instant Petition he was a federal prisoner in

the custody of the Federal Bureau of Prisons ("BOP") serving a 63-month

term of imprisonment, followed by five years' supervised release. (ECF No.

12-1 at 17.)[1] Petitioner was released, however, sometime in February

2016.[2] The Petition stems from a prison administrative disciplinary

---

[1] Petitioner was convicted of conspiracy to distribute and possession with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and 846. (ECF No. 12-1 at 17.) He was sentenced on September 26, 2011. (*Id.*)

[2] Petitioner was scheduled to be released on February 18, 2016. (ECF No. 12-1 at 18.) According to the BOP's online public inmate locator Petitioner was released on February 5, 2016. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last

conviction for escape with voluntary return to BOP custody. (ECF No. 1.) Petitioner presents four grounds for relief, contending that the disciplinary proceeding violated his due process rights. (*Id.*)

Respondent has filed a response and appendix with relevant portions of the administrative record. (ECF No. 12.) Respondent argues that the petition is due to be dismissed because Petitioner did not administratively exhaust the issues raised therein, and even if he had, he nonetheless fails to meet the burden necessary to overturn the Discipline Hearing Officer's ("DHO") decision. (*Id.*) Petitioner has not filed a reply and the time for doing so has expired. Upon due consideration of the Petition, the Response, and the administrative record, the undersigned recommends that the Petition be denied.[3]

## Background

On October 9, 2014, Petitioner was in the custody of the BOP assigned to Diersen Charities, a residential re-entry center ("RRC"). (ECF No. 12-1 at 35, 46 ¶ 5.) Petitioner signed out of the RRC at 7:06 a.m. to go

---

visited July 27, 2017) (Alex Christop Douglas, Register Number 43693-074).

[3] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

to work at Robertson & Son's Auto Body Shop ("Robertson") in Brownsville, Tennessee. (*Id.* at 22, 35, 46 ¶ 5.) Petitioner called the RRC at 7:26 a.m. to report that he had arrived to work. (*Id.*) Electronic monitoring, however, revealed that Petitioner did not leave the RRC until 11:56 a.m. (*Id.* at 24, 35, 46 ¶ 5) Accordingly, Shalonda Wilson, an employment specialist, went to Robertson to conduct an on-site work check and discovered that Petitioner was not at work. (*Id.* at 26, 35, 46 ¶ 5.) The manager advised Ms. Wilson that Petitioner was hired approximately three weeks ago but was failing to report to work. (*Id.*) According to GPS monitoring, Petitioner then returned home at 12:43 p.m. (*Id.* at 24, 33.)

Further investigation into Petitioner's whereabouts during the dates and times he was scheduled to be at work revealed that Petitioner had been leaving the RRC and returning at various times when he was supposed to be at work, despite staff at Robertson advising that Petitioner was at work. (*Id.* at 26, 35, 46 ¶ 5.)

Petitioner was charged on October 9, 2014, with escape with voluntary return to BOP custody, pursuant to Disciplinary Code 102. (*Id.* at 26–27, 31–33, 35, 47 ¶ 6.) That same day Petitioner was provided a copy

of the incident report, which advised him of the charge, and informed him of his rights during the inmate discipline proceedings. (*Id.* at 26-27, 29, 31, 35, 47 ¶ 6.) Petitioner waived his right to have a written copy of the charge at least 24 hours prior to appearing before the Center Discipline Committee ("CDC"). (*Id.* at 29, 47 ¶ 7.)

Petitioner appeared before the CDC on October 10, 2014. (*Id.* at 31, 47 ¶ 8.) The CDC found that Petitioner committed escape with voluntary return to BOP custody as charged. (*Id.* at 32, 47 ¶ 9.) The CDC recommended loss of good conduct time and loss of privileges for 30 days and referred its findings to the DHO for review. (*Id.* at 32, 35.)

The DHO reviewed the CDC's findings and concluded that there was some evidence to support the charge of escape with voluntary return to BOP custody. (*Id.* at 35, 48 ¶ 10.) Accordingly, the DHO certified the CDC's decision on October 20, 2014, and sanctioned Petitioner by disallowing 41 days good conduct time, forfeiting 49 days non-vested good conduct time, and imposing a 90-day period of loss of privileges deemed appropriate by staff. (*Id.* at 35, 48 ¶¶ 10–11.)

The DHO's certification memorandum was delivered to Petitioner on October 21, 2014. (ECF No. 1 at 15.) The DHO's certification

memorandum included a statement of the evidence the DHO relied upon and the reasons for the sanctions that were imposed. (ECF No. 12-1 at 35) Petitioner was advised therein of his right to file a regional administrative appeal to the North Central Regional Office within 20 days of receipt of the DHO's certification. (*Id.*)

Petitioner was taken into custody on October 21, 2014, and housed at the CCA-West Tennessee Detention Center in Manson, Tennessee ("Tenn. Detention Center"). (ECF No. 1 at 15.) He was later transferred to the Federal Correctional Institution in Marianna, Florida ("FCI Marianna"). (*Id.* at 16.)

Sometime on or before February 17, 2015—after being transferred to FCI Marianna—Petitioner filed a regional administrative appeal (hereinafter "Regional Appeal") in the North Central Regional Office challenging the CDC's findings and the DHO's certification. (*Id.* at 8.) In his Regional Appeal Petitioner stated that he filed a prior regional administrative appeal on November 1, 2014—while housed at the Tenn. Detention Center—but had not received a response and therefore assumed the remedy had been denied, thus requiring him to proceed with the instant appeal. (*Id.*) The regional office, however, rejected Petitioner's Regional Appeal on February

17, 2015, because (1) Petitioner should have submitted his appeal to the Southeast Regional Office, not the North Central Regional Office, and (2) Petitioner's appeal was untimely because it was not received within 20 days of October 21, 2014—the date Petitioner received the DHO's certification. (*Id.* at 14; ECF No. 12-1 at 20.)

Petitioner then filed a central administrative appeal on March 5, 2015 (hereinafter "Central Appeal"), which the General Counsel received on March 16, 2015. (ECF No. 1 at 15; ECF No. 12-1 at 20.) Petitioner therein argued that he had in fact timely filed a regional appeal on November 1, 2014, and that the instructions he received regarding filing his appeal were erroneous. (ECF No. 1 at 15–16.) The General Counsel rejected his Central Appeal on May 7, 2015, however, and directed Petitioner to obtain a staff memorandum explaining the untimeliness issue and re-submit his appeal in the appropriate regional office. (ECF No. 12-1 at 20.)

Petitioner thereafter filed the instant Petition in this Court challenging the disciplinary proceeding. (ECF No. 1.) Petitioner seeks to have his disciplinary record expunged, his good conduct time restored, and his early

release time reinstated. (*Id.*)[4]

## Discussion

## I.     Petitioner failed to exhaust his administrative remedies.

Challenges to prison disciplinary proceedings that resulted in the loss

of good time credits are properly construed as habeas corpus claims.

*Preiser v. Rodriguez*, 411 U.S. 475, 478 (1973). Section 2241 provides a

limited basis for habeas actions brought by federal prisoners challenging

the execution of a sentence, as opposed to the sentence or conviction

itself. *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1351 n.1, 1352

(11th Cir. 2008); *see Abdulhaseeb v. Ward*, 173 F. App'x 658, 659 n.1

(10th Cir. 2006) (claims challenging the deprivation of good time credits

_____

[4]Although Petitioner has since been released from prison, his release does not render his Petition moot. "If a petitioner's sentence expires while his habeas petition is awaiting adjudication, some collateral consequence must be present in order to satisfy the case-or-controversy requirement." *Watkins v. Haynes*, 445 F. App'x 181, 183 (11th Cir. 2011) (citing *Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968)). When a prisoner serves excess time in prison, a district court may exercise their discretion under 18 U.S.C. § 3583(e) to reduce or terminate the term of supervised release. *United States v. Johnson*, 529 U.S. 53, 60 (2000). Thus, although a district court would be unable to reduce a prison term upon finding that disciplinary proceedings were due to be overturned, the court could equitably reduce the petitioner's term of supervised release. *Watkins*, 445 F. App'x at 183. In this case, Petitioner remains on supervised release. Accordingly, because this Court could—upon a finding that the disciplinary proceeding was due to be overturned—alter the supervised release portion of Petitioner's sentence, his Petition is not moot. *See id.* (petition was not rendered moot by petitioner's release from prison because success could have altered the supervised release portion of his sentence).

and other prison disciplinary matters attack the execution of a sentence

and should be pursued via § 2241).

Federal prisoners seeking habeas relief under § 2241 must exhaust

their administrative remedies before habeas relief can be granted. *Skinner*

*v. Wiley*, 355 f.3d 1293, 1294–95 (11th Cir. 2004); *see Santiago-Lugo v.*

*Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (the exhaustion requirement is

not jurisdictional so a court need not inquire into exhaustion on its own, but

instead has the discretion to accept or reject a concession that

administrative remedies have been exhausted).

> The BOP's Administrative Remedy Program requires the
> prisoner to submit a formal written Administrative Remedy
> Request within "20 calendar days following the date on which
> the basis for the Request occurred" or within the time frame of
> any extension that is allowed. 28 C.F.R. § 542.14(a)–(b).
> Where the prisoner seeks to appeal a DHO finding, the formal
> Request is to be submitted directly to the appropriate regional
> office. § 542.14(d)(2). "An inmate who is not satisfied with the
> Regional Director's response may submit an Appeal . . . to the
> General Counsel within 30 calendar days of the date the
> Regional Director signed the response." § 542.15(a). The time
> limits may be extended upon a showing of a valid reason for
> the delay. *Id.* "Appeal to the General Counsel is the final
> administrative appeal." *Id.*

*Watkins*, 445 F. App'x at 184.

"Exceptions to the exhaustion requirement apply only in

'extraordinary circumstances.'" *Jaimes v. United States*, 168 F. App'x 356,

359 (11th Cir. 2006) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)).

Extraordinary circumstances include "where the available administrative

remedies either are unavailable or wholly inappropriate to the relief sought,

or where the attempt to exhaust such remedies would itself be a patently

futile course of action." *Fuller*, 11 F.3d at 62. "[T]he petitioner 'bears the

burden of demonstrating the futility of administrative review.'" *Jaimes*, 168

F. App'x at 359 (quoting *Fuller*, 11 F.3d at 62).

The record demonstrates that Petitioner failed to properly exhaust his

administrative remedies prior to filing the instant Petition. The DHO

certified the CDC's decision and imposed sanctions on October 20, 2014.

Petitioner received the DHO's certification on October 21, 2914. Petitioner

was required to submit a regional appeal by November 10, 2014. He did

not file his Regional Appeal, however, until February 17, 2015. His

Regional Appeal was therefore rejected as untimely and because it was

filed in the wrong regional office. Although Petitioner then filed his Central

Appeal, the General Counsel rejected that appeal as well, directing

Petitioner to obtain a staff memorandum explaining the untimeliness issue

and to re-submit his appeal in the appropriate regional office. Nothing in

the record suggests that Petitioner thereafter complied with the General

Counsel's instruction, nor does Petitioner argue as much. Instead,

Petitioner turned to federal habeas proceedings in this Court for relief. This

Court, however, is precluded from considering Petitioner's Petition

because he failed to properly exhaust his administrative remedies.

Petitioner's representation in his Regional Appeal that he timely

submitted a formal written administrative remedy on November 1, 2014,

does not change the analysis. Pursuant to 28 C.F.R. § 542.18,

> [o]nce filed, response shall be made by the Warden or CCM
> with 20 calendar days; by the Regional Director within 30
> calendar days; and by the General Counsel within 40 calendar
> days. . . . . If the inmate does not receive a response within the
> time allotted for reply, including extension, the inmate may
> consider the absence of a response to be a denial at that level.

Even if Petitioner had filed a regional appeal on November 1, 2014,

he was to consider the lack of response within 30 days (by December 1,

2014) to be a denial at that level. He was then required to submit an

appeal to the General Counsel within 40 days (by January 10, 2015).

Despite acknowledging that the lack of a response was to be construed a

denial, Petitioner took no further action until he filed his Regional Appeal

on February 17, 2015. Thus, even assuming he timely filed a regional

appeal, he nonetheless failed to properly exhaust his administrative

remedies by timely appealing the Regional Director's denial to the General

Counsel.

Notably, Petitioner offers no explanation for his failure to properly

exhaust administrative remedies. Despite Respondent raising the

exhaustion issue, Petitioner declined to file a reply memorandum

addressing exhaustion. Petitioner notes in his Petition under ground four

that he "was not provided any opportunity to appeal due to the conditions

of his confinement and the lack of having access to the Reports and

Appeal." (ECF No. 1 at 5.) Petitioner, however, did file appeals as

previously discussed. Although exceptions to the exhaustion requirement

exist, Petitioner has failed to meet his burden to demonstrate the futility of

administrative review. Accordingly, Petitioner's failure to exhaust

administrative remedies cannot be excused and the Petition is due to be

dismissed.

## II. Even assuming Petitioner had properly exhausted his administrative remedies, Petitioner was afforded the requisite due process throughout his disciplinary proceeding.

"Prison disciplinary proceedings are not part of a criminal

prosecution, and the full panoply of [constitutional] rights due a defendant

in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539,

556 (1974)).

> The Supreme Court has held that, when a prison disciplinary
> proceeding may result in the loss of good time credits, a
> prisoner is entitled to three procedural protections: (1) advance,
> written notice of the charges against him and at least 24 hours
> to prepare a defense; (2) an opportunity, when consistent with
> institutional safety and correctional goals, to call witnesses and
> present documentary evidence in his own behalf; and (3) a
> written statement by the factfinder of the evidence relied upon
> and the reasons for the disciplinary action.

*Stinger v. Grayer*, 159 F. App'x 914, 915 (11th Cir. 2005) (citing *Wolff*, 418

U.S. at 563–66). The revocation of good time credits, however, "satisfies

the minimal requirements of due process if the findings of the disciplinary

officer are supported by 'some evidence.'" *Id.* (quoting *Superintendent,*

*Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985)). This analysis requires

the district court to consider "whether there is any evidence in the record

that could support the conclusion reached by the disciplinary board." *Id.*

(quoting *Hill*, 472 U.S. at 455–55)); *see Young v. Jones*, 37 F.3d 1457,

1460 (11th Cir. 1994) (when reviewing claims involving prison disciplinary

proceedings, a federal court is limited "to determin[ing] whether an inmate

receive[d] the procedural protections provided by *Wolff* and whether 'some

evidence' exists which supports the hearing officer's determination").

**A.    Neither the hearing before the CDC, nor the lack of a hearing before the DHO denied Petitioner procedural due process.**

In ground one Petitioner says he was denied procedural due process because the CDC failed to automatically refer the incident report to the DHO for review as required by 28 C.F.R. § 541.7. (ECF No. 1 at 3.) Similarly, in ground two, Petitioner claims he was denied due process because the DHO did not conduct a hearing as required by 28 C.F.R. § 541.8. (*Id.* at 4.) Petitioner's reliance on § 541.7 and § 541.8, however, is misplaced.

BOP Program Statement 5270.09 provides, "Community Corrections Managers may take disciplinary action on inmates in contract RRC's." Federal Bureau of Prisons, *Program Statement 5270.09*, p. 3 (2011), https://www.bop.gov/policy/progstat/5270_009.pdf [hereinafter *PS 5270.09*]. Pursuant to BOP Program Statement 7300.09, "[f]or those contract facilities which are not required to use Bureau discipline procedures (generally local jails and state Departments of Correction) the CCM must ensure the facilities use and adhere to the concepts of due process as outlined in *Wolff v. McDonnell*." Federal Bureau of Prisons, *Program Statement 7300.09*, p. 18–19 (2016),

https://www.bop.gov/policy/progstat/7300_009_CN-3.pdf [hereinafter *PS 7300.09*].[5] With respect to contract facilities that are required by the terms of their contract to use a discipline system in which a Bureau DHO takes final action,

> [o]rdinarily, within three working days of receipt of the Center Disciplinary Committee (CDC) Packet, the DHO shall review it for compliance with the CDC discipline policy specified in this Manual and *Wolff v. McDonnell*. . . . . The DHO shall also sign and date the CDC Report on the top right side to certify compliance with disciplinary requirements. . . . . If the DHO is satisfied that all criteria are met, he or she will certify, impose final action, and sign and date the CDC report.

*Id.*

Because Petitioner was housed in an RRC at the time of the incident, due process is afforded at a CDC hearing, not a DHO hearing. *Abbott v. Hollingsworth*, No. CIV. 14-6784 NLH, 2015 WL 1952355, at *5 (D.N.J. Apr. 29, 2015); *Stevens v. Thomas*, No. 11-CV-790-MA, 2011 WL 3563131, at *4 (D. Or. Aug. 10, 2011) (citing *Mazzanti v. Bogan*, 866 F. Supp. 1029, 1033 (E.D. Mich. 1994)); *see Sierra v. Scism*, No. 1:10-CV-1885, 2011 WL 65665, at *2 (M.D. Pa. Jan. 7, 2011) (noting that

---

[5] The 2016 version of PS 7300.09 implemented a change to the 1998 version pertaining to subsistence collection for any resident while on Home Confinement, which is unrelated to the instant Petition. The 2016 version remains the same pertaining to disciplinary proceedings for inmates in contract facilities. *See* ECF No. 12-1 at 37–44.

"every court which has examined the procedures established by Program Statement 7300.09 has held that these procedures satisfy the procedural due process requirements established by the Supreme Court in *Wolff v. McDonnell*"); *Harris v. Norwood*, No. CV 07-2588-SGL, 2008 WL 5377647, at *1 (C.D. Cal. Dec. 16, 2008) (no due process violation where petitioner at RRC was given a hearing before the CDC hearing, reviewed by the DHO prior to sanctions); *Rini v. Nash*, No. Civ.05-2202 RBK, 2005 WL 2033689, at *3 (D.N.J. Aug. 22, 2005) ("*Wolff* does not mandate that Petitioner be granted two hearings one before the CDC and one before the DHO."). PS 7300.09 makes clear that Petitioner was entitled only to have the DHO review the CDC disciplinary proceeding, certify that the CDC complied with *Wolff*, sign and date the CDC report, and impose final action and sanctions. In this case, the DHO did just that.

The CDC was not required to automatically refer the incident report to the DHO for a hearing. Instead, the CDC was to hold the hearing and then refer its findings to the DHO for review. The DHO was not required to hold a second hearing.

Accordingly, Petitioner was not denied due process by having a hearing before the CDC and not before the DHO. *See Abbott v.*

*Hollingsworth*, No. CIV. 14-6784 NLH, 2015 WL 1952355, at *5 (D.N.J.

Apr. 29, 2015) (petitioner was not denied due process where "DHO

reviewed, certified, imposed a final action and signed and dated the CDC

report which contained the basis for its findings"). Grounds one and two of

the Petition are therefore due to be denied.

> **B. The CDC hearing fully complied with *Wolff's* procedural due process requirements and evidence in the record supports the DHO's decision.**

Petitioner claims in ground three that neither the CDC nor the DHO

based its decision on the greater weight of the evidence. (ECF No. 1 at 4.)

Despite admitting that he was "out of bounds," Plaintiff claims there was

simply no evidence to support a finding that he escaped with voluntary

return to BOP custody. (*Id.* at 4–5.)

To the extent Petitioner seeks to have this Court re-weigh the

evidence, Petitioner's claim is not a cognizable habeas claim. Further,

although Petitioner contends that the decision was not based on the

"greater weight of the evidence," the proper due process standard is

merely a finding that "some evidence" supported the decision. *See Stinger*,

159 F. App'x at 915.

To the extent Petitioner's claim is construed to allege that the CDC's

hearing and the DHO's decision denied him due process, his claim fails.

First, Petitioner was provided advance written notice of the charges against

him and waived his right to have at least 24 hours advance notice prior to

the CDC hearing.

Second, Petitioner was provided with the opportunity to call

witnesses and present documentary evidence on his behalf. Petitioner

requested that his supervisor appear to testify on Petitioner's behalf.

Although it is unclear whether his supervisor attended the hearing and

testified in person or merely provided written testimony, the record

nonetheless demonstrates that both the CDC and the DHO considered the

supervisor's testimony.[6] Notably, Petitioner does not contend that he was

---

[6] The CDC's report states that Supervisor James Robinson was called as a witness and appeared. (ECF No. 12-1 at 31.) The CDC's report also states, however, that Petitioner "did request witness testimony from [his] supervisor James Robinson. Contact was unsuccessful for Mr. Robinson at the time of the hearing." (*Id.* at 32.) Yet, the CDC explained as part of the specific evidence relied on to support its findings: "The inmate contacted the RRC at 7:06 am stating he was leaving for work. At 7:26 am, the inmate contacted the RRC and stated he had arrived to work. A review of [the] house arrest monitoring report show[ed] that the inmate did not leave home until 11:56 am. The inmate then returned home at 12:43 pm indicating that he could not have been at work. *This also shows deception in the statement of the employer as well.* Therefore the CDC finds the listed evidence supports you committed the prohibited act of Escape from escort secure institution, code 102." (*Id.* at 33) (emphasis added). Similarly, the DHO stated, "[y]our witness and the documents presented by your witness were not credible because the manager of the work site confirmed you were not showing up for work and confirmed you were not there at all on October 9, 2014. Also, your pay was not consistent with the hours on the hand written time sheets." (*Id.* at 35.)

either denied the right to call witnesses or somehow prevented from presenting evidence.

Third, the DHO provided Petitioner with a written statement of the evidence relied upon and the reasons for the disciplinary action. Moreover, sufficient evidence in the record supports the conclusion reached by the DHO. Code 102, a "greatest severity level prohibited act," charges an inmate with one of the following: "Escape from escort; escape from any secure or non-secure institution, including community confinement; escape from unescorted community program or activity; escape from outside a secure institution." *PS 5270.09*, at p. 44. Alternatively, Code 200, a "high severity level prohibited act," charges an inmate with "[e]scape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours." *Id.* at 46. Available sanctions differ depending on whether the act is considered a "greatest severity level prohibited act" or a "high severity level prohibited act." *See id.* at 45–49.

The DHO explained that the GPS showed Petitioner did not leave his house until 11:56 a.m. on October 9, 2014, despite signing out of home confinement at 7:06 a.m. and calling the RRC at 7:26 a.m to report that he

arrived to work. (*Id.* at 35.) An on-site work check at 12:40 p.m., however, revealed that Petitioner was not at work and the manager indicated that Petitioner had been failing to report to work for the last three weeks. (*Id.*) The GPS also showed that Petitioner signed back into home confinement that day while he was supposed to be at work. (*Id.*) Furthermore, Petitioner's pay was not consistent with the hours on the handwritten time sheets. (*Id.*) The DHO concluded that Petitioner's whereabouts were—at the very least—unknown or unapproved on October 9, 2014, from 7:06 a.m. until 12:40 p.m., which is more than four hours. (*Id.*) Thus, there was at least some evidence to support a finding that Petitioner committed a prohibited act in Code 102.

The DHO then imposed sanctions, stating that the sanctions were to express the seriousness of Petitioner's actions, and certified that the CDC action was in accordance with BOP policy. (*Id.*) Accordingly, the CDC's hearing fully complied with *Wolff*'s procedural due process requirements and evidence in the record supports the DHO's decision. *See* 418 U.S. at 563–66. Ground three, therefore, does not warrant habeas relief.

### C.    Petitioner was not denied due process during the appeal process.

Finally, in ground four Petitioner contends that he was denied due process because the CDC lacked authority to hold a hearing on the violation. (ECF No. 1 at 5.) He also says he "was not provided any opportunity to appeal due to the conditions of his confinement and the lack of having access to the Reports and Appeal." (*Id.*)

To the extent Petitioner challenges the hearing before the CDC, his claim is due to be denied for the reasons previously discussed. Similarly, to the extent he says he was denied due process because the conditions of his confinement prevented him from appealing, his claim is also due to be denied.

Although Petitioner provides no additional facts supporting this claim, based on the assertions in his Central Appeal, it appears that Petitioner's claim is premised on receiving a DHO memorandum on October 21, 2014 (as opposed to a CDC report), being instructed to submit his appeal to the North Central Office (despite being advised in the regional office's response rejecting his Regional Appeal that he should have submitted his regional appeal in the Southeast Office), and having never received a

response to the regional appeal he says he filed on November 1, 2014.

*See* ECF No. 1 at 15–16.

With respect to receiving a DHO memorandum as opposed to a CDC report, *Wolff* requires that a prisoner receive a written statement of the evidence relied upon and the reasons for the disciplinary action. *See* 418 U.S. at 564. *Wolff* does not require that a prisoner receive a copy of the CDC report that the DHO certified. Here, Petitioner admits that he received the DHO's memorandum. As discussed, that memorandum included a statement of the evidence relied upon and the reasons for the disciplinary action. Accordingly, Petitioner was not denied due process by receiving the DHO memorandum and not the CDC report.

Turning to the rejection of his Regional Appeal for filing in the North Central Office instead of the Southeast Office, Petitioner fails to demonstrate how this prejudiced him from appealing the DHO's decision. Notably, Petitioner filed his Regional Appeal after being transferred to FCI Marianna in Florida. Thus, it does not appear that Petitioner was provided erroneous information pertaining to his appeal by the DHO because at that time he was housed in an entirely different region of the country. Nonetheless, Petitioner filed his Central Appeal, appealing the rejection of

his Regional Appeal, and explained that he was told by the DHO to file his regional appeal in the North Central Region. Although his Central Appeal was rejected, he was nonetheless instructed to obtain a staff memorandum explaining his untimeliness and then re-submit his appeal in the appropriate region. (ECF No. 12-1 at 20.) Based on the record before this Court, Petitioner declined to re-submit his appeal in the appropriate region and instead filed his Petition in this Court. He cannot demonstrate that he was somehow prejudiced when he was provided an opportunity to re-submit his appeal but declined to do so.

Finally, with respect to having never received a response to the regional appeal he says he filed on November 1, 2014, Petitioner explained this issue in his Central Appeal. As noted, however, despite being instructed to obtain a staff memorandum explaining his untimeliness and then re-submit his appeal in the appropriate region, he declined to do so. Moreover, as previously discussed regarding exhaustion of administrative remedies, Petitioner acknowledged that the lack of response was to be construed as a denial but he nonetheless failed to timely file an appeal to the General Counsel. He has therefore failed to demonstrate how the failure to receive a response to the alleged November 1, 2014 regional

appeal somehow deprived him of due process. Ground four fails to warrant federal habeas relief.

## Recommendation

Petitioner has failed to demonstrate that the disciplinary action resulting in his loss of good conduct time gives rise to any claim for federal habeas relief or states any claim for a denial of his constitutional right to due process. Accordingly, it is respectfully **RECOMMENDED** that the Petition, ECF No. 1, should be **DENIED,** and a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 3ʳᵈ day of August 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**